IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALLOYED ENTERPRISES CO., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Thomas Madison Glimp, | ) | |
| | ) | |
| Proposed substitute plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 21 C 4468 |
| | ) | |
| MICROSOFT CORP., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

On August 23, 2021, an entity called Alloyed Enterprises Co., a limited liability company claiming to have places of business in Chicago; Boulder, Colorado; and Ashburn, Virginia, filed a lawsuit against what the caption of the case referred to as "Microsoft Corporation, RCN Telecom Services LLC, & Comcast Corporation of the Department of Homeland Security." Alloyed sought relief under a myriad of federal statutes for what it contended was a campaign by DHS and the National Security Agency to retaliate for supposed whistleblower activity. Alloyed was not represented by counsel but instead filed a purported "pro se appearance" by Thomas Glimp, its principal. Alloyed filed, along with the complaint, a torrent of other motions seeking permission to appear "pro se" through Mr. Glimp (who is not an attorney), to expedite discovery, to direct the U.S. Marshal to serve summons while waiving any fees, for a

declaratory judgment, for an injunction, "for partial summary judgment of equitable replevin and attachment," and other relief. Alloyed also sought leave to file the complaint and other filings under seal—which it had already done.

The Court entered an order on August 24, 2021 denying Alloyed's request to file the case under seal, and it directed the Clerk to unseal the case. The Court also denied Alloyed's request to appear pro se. In the same order, the Court stated the following:

> An entity like Alloyed Enterprises may not represent itself but rather must appear through a licensed attorney. See United States v. Hagerman. 545 F.3d 579 at 581 (7th Cir. 2008). Mr. Glimp concedes he is not an attorney and thus he may not serve as Alloyed Enterprises' counsel. And Alloyed Enterprises has not shown that it qualifies for appointment of counsel financially or otherwise.

Order of Aug. 24, 2021 (dkt. no. 22). The Court, in the same order, also made preliminary comments regarding Alloyed's complaint, stating as follows:

> [I]t is almost certainly subject to dismissal as frivolous and for failure to comply with Fed. R. Civ. P. 8's requirement to provide a "short and plain statement" of the plaintiff's claim. The complaint is a sprawling 87-page document in which Alloyed Enterprises contends among other things that certain of the defendants have hacked into plaintiff's devices for a four-year period and have among other things "purposely misattributed speech comprising inchoate terrorist activities to Plaintiff's person with the intent to penalize Plaintiff by manipulating counter-terrorism and policing algorithms to create cause to commence intrusive digital and physical search and deprive Plaintiff of the beneficial use of private property while absconding from due process obligations." This like many of the complaint's allegations is (at least) borderline unintelligible and not explained in the body of the complaint.

*Id.* Finally, returning to the issue of Alloyed's representation, the Court stated that "[u]nless plaintiff Alloyed Enterprises files an appearance by counsel who is a member of the bar of this District by no later than 9/10/2021 the Court will dismiss its complaint as an improperly filed pro se complaint."

Alloyed then began an effort to work its way around the legal prohibition against

an entity representing itself in court or acting through a non-lawyer. Specifically, on September 1, Mr. Glimp filed a motion asking to "intervene" in the lawsuit "in his capacities as President and Chairman of Alloyed Enterprises IL Company, a registered operating member of Alloyed Enterprises Company." Dkt. no. 28, ECF p. 2 of 8. The Court denied this motion on September 13, stating that Mr. Glimp had not shown a viable basis to intervene in the case as an individual plaintiff. Order of Sept. 13, 2021 (dkt. no. 29). The Court, in the same order, extended the deadline for Alloyed to file an appearance of counsel. *Id.* It later granted Alloyed's motion for a further extension of this deadline, through October 14 but said that would be the last extension. Order of Sept. 27, 2021 (dkt. no. 32).

On October 6, Mr. Glimp filed a motion to substitute himself as the plaintiff and to amend his complaint. As the basis for this, Mr. Glimp's motion described a "transfer of interests from the constituents of Alloyed Enterprises Company into a special purpose vehicle," namely a trust of which he is the trustee. This, Mr. Glimp said, would permit him to proceed *pro se*. The Court does not know, and is not inclined to analyze at this point, the appropriateness of this arrangement and will instead grant the motion to substitute and will proceed to assess the proposed amended complaint as well as the original complaint.

In the amended complaint, Mr. Glimp says that he is suing for "injuries afflicted against [his] small business following his delivery of whistleblower tips and reports against dealers of specialty marine re-insurance whom the record reflects effectuated mortgage-backed securities fraud against the Treasury." Am. Compl. ¶ 2. In a nutshell, he alleges retaliation consisting of falsely branding him as involved in terrorism, *id.* ¶ 4,

3

"sieging his computing and internet services and facilities," *id.* ¶ 3, and engaging in "extra-jurisdictional search, surveillance, and interdiction" and restricting his "access to open markets by precipitative impairments to the proper functioning of essential computing, telephone, and internet devices," *id.* ¶ 5.

Mr. Glimp attributes all of this activity to the government—DHS and, perhaps, the National Security Agency—which he says is acting through Microsoft, Comcast, RCN, AT&T, the Illinois State Police, the Chicago Police Department, and the Cook County Sheriff, all of which he refers to as "Department of Homeland Security assignees." The story, as told in the complaint, is as follows.

Mr. Glimp says that he "acquire[d] access to insider knowledge that others are without means to obtain" due his "personal proximity to persons of influence in United States politics," including former Secretary of Treasury Hank Paulson, having grown up "a few miles" from Paulson. *Id.* ¶ 35. In 2016, Mr. Glimp says, he learned that a friend's father and a godfather's neighbor were responsible for possibly "trillions" of dollars in harm to the U.S. Treasury, via mortgage-backed securities fraud, affected from the brokerage of Wilmington Trust. Mr. Glimp says that he "corroborated" this in some way via a conversation with a neighbor of someone named Warren Wamberg, in which the neighbor implicated Wamberg and someone named Kenneth Kies. *Id.* ¶¶ 36-39. Mr. Glimp says that he then filed a "whistleblower" report with the FBI, "to hedge against the risks of becoming a loose end who knew too much." *Id.* ¶ 40. He also made additional reports against Kies to the SEC and other regulatory agencies.

The story next turns to the defendants named by Mr. Glimp in his amended complaint, which include the aforementioned defendants as well as AT&T. He says that

4

some of them (Microsoft, Comcast, and RCN's parent) are clients of Kies's firm, which from Mr. Glimp's description seems as though it may be a lobbying firm. Telecommunications carriers, he says, are required to provide DHS and its "assignees" (local police agencies, evidently) with access to their facilities to conduct "counter-terrorism interdiction campaigns of its own design." *Id.* ¶¶ 53-55. This, Mr. Glimp contends, includes computer hacking as well as trespass on internet "easements" and computing devices. *Id.* ¶ 58. He also says that DHS engages in data-mining to allow it to predict acts of domestic terrorism but that its models are prone to error. *Id.* ¶¶ 59-61.

Mr. Glimp says that in 2017 he retained a patent law firm to file claims to what he refers to as "intellectual property improvements" (without identifying what they were). *Id.* ¶ 66. He claims, however, that law firm personnel were "parties to an association" with the aforementioned Wamberg, a maritime reinsurance dealer; the firm invited him to open "a Lloyds of London account"; this somehow involved Mr. Glimp with Wamberg; and the law firm did not disclose its relationship with Wamberg "despite [its] knowledge of Mr. Glimp's delivery of testimony against Wamberg." *Id.* ¶¶ 67-68.

The law firm, Mr. Glimp alleges, bamboozled him into signing a power of attorney and then used it "to file a document [with] the PTO without Mr. Glimp's informed consent." *Id.* ¶ 69. This document, Mr. Glimp says, "contained a recipe for biological terrorism," involving "a plan to manufacture a virulent permutation of the highly pathogenic *e. Coli* bacteria using gene splicing methods"—methods that Mr. Glimp says he, in fact, knows nothing about. *Id.* ¶¶ 70-71.

Mr. Glimp believes that the publication of this document—since removed from the PTO database, he says—"raised flags" and triggered DHS's "counterterrorism

5

algorithms." *Id.* ¶ 73. He also cites other events that he claims are suspicious. He says he attended a writing class; someone from his hometown suburb was there; she worked for Microsoft; and she supposedly asked him "bizarre leading questions" about his affinity for "the Q-Anon computer hacker association." *Id.* ¶ 76. Mr. Glimp see this, it appears, as evidence of a net being drawn around him—particularly given his later computer-related troubles.

    Mr. Glimp also says that while engaged in work activities, he was assigned to work with a person from Palestine. He says that "in conversations with the National Security Agency, the NSA's FOI/PA liaison told Mr. Glink that dialog with this individual would cause Mr. Glimp being flagged as a terrorist and subject to FISA surveillance." *Id.* ¶ 81.

    Following these events, Mr. Glimp alleges, his computers and internet service "began to malfunction on a near-constant basis." *Id.* ¶ 83. He contends that native software on his computers was impaired by external intervention; documents and files that he created were altered; Microsoft Excel doesn't perform calculations accurately; Microsoft Word "has printed materials inconsistently with what was displayed on screen"; and so on. He also contends that cellular carrier AT&T disrupted his service; someone falsely told Alloyed's lender that the company was out of business; forms that he filed were "defaced" by unknown third parties; other software doesn't perform as it is supposed to; he has been unable to download or use certain software; and his attempts to get an enhanced, and more secure, form of internet service have been rebuffed.

    Mr. Glimp attributes all of this to a scheme of retaliation that he claims is directed by DHS and involves Microsoft, RCN, Comcast, and AT&T, as well as state and local

6

police agencies. He derives this conclusion, it appears, from the fact that the problems he describes began to occur at some point after his claimed whistleblower activity. Mr. Glimp (and, before him, Alloyed in the original complaint) sues for violation of the antitrust laws; the First, Fourth, Fifth, and Fourteenth Amendments; the Dodd-Frank Act; and other statutes. Among other things, Mr. Glimp contends that persons "deployed" by DHS broke into his home, office, and computers "where they set forth seizing digital and physical papers, effects, and other articles," including correspondence, business materials, and "a piece of the U.S.S. Constitution from Boston Yard," replacing them with forgeries—which, Mr. Glimp seems to say, he cannot now provide because they "do not meet the Court's criteria for originals." *Id.* ¶¶ 137-38. He says that the NSA's "FOI/PA Officer" "resoundingly verified" that he "has almost certainly been flagged as a terrorist," falsely. *Id.* ¶ 141.

A court has the authority to dismiss a complaint if it is fantastical or so insubstantial to be absolutely devoid of merit. *See, e.g., Hagans v. Lavine*, 415 U.S. 528, 536-37 (1984). "A suit that is utterly frivolous does not engage the jurisdiction of the federal courts." *Carr v. Tillery*, 591 F.3d 909, 917 (7th Cir. 2010). Put another way, a plaintiff "must present a 'substantial' federal question in order to invoke the jurisdiction of a federal court," and if he does not do so his case is subject to dismissal for lack of subject matter jurisdiction. *Douglas v. DuComb Center*, 28 F. App's 562, 563 (7th Cir. 2002) (citing *Hagans*, 415 U.S. at 537).

This is the case here. Mr. Glimp attributes all of the bad things that he says have happened to him to a vast conspiracy, directed by the government, including the National Security Agency, which he seems to contend has engaged in a surveillance

7

effort against him under the Foreign Intelligence Surveillance Act. All of this is happening, he claims, because he made complaints against Wamberg and Kies—who he doesn't claim to know, doesn't claim to have worked with, and doesn't claimed to have talked to or otherwise communicated with. None of it is in the least bit plausible.

Mr. Glimp's amended complaint—like Alloyed's original complaint—consists only of "claims describing fantastic or delusional scenarios." *Walton v. Walker*, 364 F. App'x 256, 258 (7th Cir. 2018). The primary feature is a claimed sprawling conspiracy by which Mr. Glimp attempts to tie together obviously unconnected events and link them to a "whistleblower complaint" he made, admittedly without any personal knowledge, against business tycoons that he does not claim to know and with whom he does not claim to have worked. The Court can, and does, rely upon its "judicial experience and common sense," *id.*, in determining that Mr. Glimp's amended complaint (like Alloyed's original complaint) is utterly implausible and therefore fails to invoke the jurisdiction of the federal courts.

The Court adds that Mr. Glimp filed, just the other day, a motion asking to join more defendants to the case, specifically Brian Anderson (as well as, it appears, Anderson's spouse)—who committed the apparent wrong of telling Mr. Glimp that he (Anderson) "is a member of a private marine association" and that "an insurance policy impaired him from performing the lease agreement for the condo Mr. Glimp rents in Chicago," Mot. for Lv. to Amend (dkt. no. 46) ¶ 3—as well as the Burham Park Plaza Condominium Association. These defendants' alleged wrongs likewise appear to relate to the alleged scheme (which Mr. Glimp calls "a spurious FISA campaign") to deny him secure internet service. The purported claims against the Andersons and the

8

condominium association—to the effect that they are being used as the instruments of those supposedly targeting Mr. Glimp—are equally implausible and frivolous and are likewise dismissed.

## Conclusion

For these reasons, the Court directs the Clerk to enter judgment dismissing this case, including the original, amended, and proposed amended complaints, for lack of federal subject matter jurisdiction. All remaining motions are denied as moot.

Date: November 29, 2021

_____
MATTHEW F. KENNELLY
United States District Judge